# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THOMAS MERVYN, individually and on behalf of others similarly situated, <br> Plaintiffs, <br> v. <br> ATLAS VAN LINES, INC., and ACE WIDE MOVING & STORAGE CO., individually and on behalf of others similarly situated <br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No: 13 C 3587 <br><br> Judge Ronald A. Guzmán |

## ORDER

Defendants' motion to dismiss [20] is granted in part and denied in part. The RICO claim is dismissed with leave to replead in 21 days provided Plaintiff may do so commensurate with his obligations under Rule 11. The remainder of the motion to dismiss is denied. Defendants' motion for partial summary judgment [23] is granted in part.

## STATEMENT

Thomas Mervyn ("Plaintiff") brings suit on behalf of himself and others similarly situated against Atlas Van Lines, Inc. ("Atlas") and Ace World Wide Moving & Storage Co., Inc., individually and on behalf of others similarly situated. Plaintiff alleges that Atlas and Ace[1] knowingly and unlawfully miscalculated and reduced payments to truck owner-operators. Defendants move to dismiss and for partial summary judgment as to the request for injunctive relief.

### I.    Facts

Plaintiff is an owner-operator of a moving truck and van. (Compl., Dkt. # 1, ¶ 3.) He entered into a leasing agreement listing with Atlas, a motor carrier, which claims to be the second largest van line and carrier of household goods in North America. (*Id*. ¶ 4(a).) Atlas operates through a network of agents and is the assignee of lease agreements from owner-operators of equipment. (*Id*.) Ace is a moving company headquartered in Wisconsin, and on Plaintiff's information and belief, has been and continues to be one of the top revenue-producing agents of Atlas. (*Id*. ¶ 4(b).) On Plaintiff's information and belief, because of Ace's past and believed present leadership positions held with Atlas, Ace plays a high-level role in shaping the way Atlas does

---

[1] The Court refers only to Plaintiff and the two named defendants at this time because no classes have yet been certified.

business. (*Id.*) Ace was one of eleven agents that orchestrated the repurchase of Atlas in 1988 and its Chairman of the Board, John W. Steiner, was and continues to be a director and stockholder of Atlas. (*Id.*)

Under the terms of the relevant lease agreement, Plaintiff was supposed to receive compensation based on a fixed percentage of the line haul and accessorial service charges. (*Id.* ¶ 18.) Instead, defendants used understated line haul and accessorial service amounts to calculate owner-operator compensation, thus reducing the amount of compensation Plaintiff received under the lease agreement. (*Id.* ¶ 19.) Plaintiff brings the following claims: (1) violation of 49 C.F.R. § 376.12(d); (2) breach of contract; (3) violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq*. Defendants move to dismiss each claim.

## II. Standard

Plaintiff contends that the complaint should not be dismissed in part because the "dismissal is warranted only if it can be determined to a certainty that Plaintiff cannot prove any facts that would allow relief under the allegations of the complaint," and cites to *Conley v. Gibson*, 355 U.S. 41-46 (1957), but Plaintiff is incorrect. The United States Supreme Court rejected this language when analyzing the federal pleading standards in 2007. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement").

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts the well-pleaded factual allegations as true and draws all reasonable inferences from them in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). However, a complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" and set forth facts sufficient "to raise a right to relief above the speculative level." *Bell Atl.,* 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Igbal*, 556 U.S. 662, 678 (2009).

## III. Analysis

### A. Motion to Dismiss

#### 1. *Terms of Agreement*

Defendants first argue that the complaint should be dismissed in its entirety because Mervyn was paid consistent with the unambiguous terms of the contractor agreement. Specifically, Defendants challenge Plaintiff's characterization of how he was supposed to be paid. While Plaintiff states that he was supposed to receive compensation based on a fixed percentage of line haul and accessorial service charges, Defendants point to the language of the Contractor Agreement attached to Plaintiff's complaint, which, under the compensation schedule detailing the payments to contractors, states:

> (a) Linehaul and accessorial service charges shall be determined by applying the applicable effective or predetermined effective bottom line discount (determined under Atlas' rules) to the transportation and accessorial charges for each shipment.

(Compl., Ex. A, Contractor Agreement Addendum, at 21 of 32.)

Defendants note that the words "fixed percentage," as referenced by Plaintiff, are not included in the compensation provision and assert that the words "effective," "bottom line" and "discount," which are part of the relevant text, are common English language words with an unambiguous meaning, citing to the Merriam-Webster online dictionary. They further state that the term "effective bottom line discount" or "EBLD" is defined on the Atlas website. They then state that the exhibits to the complaint establish that Mervyn was paid as the contract provides; however, they argue that Exhibit D to complaint is incomplete and attach to their motion what they deem is a "complete" copy of the relevant document.

Defendants' reference to information outside the four corners of the pleadings dooms this argument in the context of this Rule 12(b)(6) motion. The Court may take into consideration on a motion to dismiss information in documents attached to the complaint or documents central to Plaintiff's claim that Defendants attach to their motion to dismiss. *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013). The Court may also take judicial notice of certain information. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). But, the Atlas website does not fall within any of these categories. In addition, the additional page to Exhibit D of the complaint to which Defendants' refer has not been authenticated. Moreover, as Plaintiff notes, under the compensation provision quoted above, certain compensation terms are "determined under Atlas' rules," which are apparently undefined in the Contractor Agreement, and will presumably require consideration of evidence outside of the complaint. For these reasons, the Court denies Defendant's motion to dismiss the Complaint based on the purported plain meaning of the relevant contract terms.

### 2. *Failure to Challenge Amounts*

Defendants next point to § 11(f) of the Contractor Agreement, which states that:

> Financial entries made by Company on payment documents shall be conclusively presumed correct and final if not disputed by Contractor within 30 days after distribution. On the date 30 days after distribution, such documents shall constitute the primary and/or primary prima facie business records between Company and the Contractor with respect to financial transactions existing between the parties as reflected on the statements, and additional underlying documentation, in support of the documents, shall not be required as a matter of proof before any administrative or judicial tribunal.

(Compl., Ex. A, Contractor Agreement, § 11(f).) Defendants assert that Plaintiff has not alleged that he timely challenged the amounts paid. Because this is essentially a statute of limitations defense that Plaintiff need not plead around, and Plaintiff has not plead facts establishing an "impenetrable

defense" to its claim, the Court denies this basis for relief. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008).

3. *Ace as a Carrier*

Under the Motor Carrier Act, 49 U.S.C. § 14704(a)(2), "[a] carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part." According to Defendants, Plaintiff does not allege that Ace is a carrier or broker, and therefore the claim against it pursuant to the Act and its regulations must be dismissed.

But, in the Contractor Agreement attached to the complaint, Ace indicates it "serves as an agent for [Atlas], a carrier engaged in the business of interstate transportation of goods," and "[p]rovides intrastate and local transportation of goods by motor vehicle under [Ace's] Authority." (Compl., Ex. A, Contractor Agreement, at page 1 of 32.) Construing the complaint in favor of Plaintiff, these statements are sufficient to allege Ace is a carrier.

4. *RICO*

Plaintiff alleges that Defendants violated RICO, 18 U.S.C. § 1962(c), by committing a pattern of racketeering activity, namely mail fraud. (Compl., Dkt. # 1, ¶¶ 38-40.) Specifically, Plaintiff alleges that Defendants committed numerous mail fraud violations "by mailing false and misleading driver settlement sheets to Plaintiff." (Compl., Dkt. # 1, ¶ 38.) "A claim under section 1962(c) . . . requires a plaintiff to demonstrate (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 399 (7th Cir. 2009).

Defendants contend that Plaintiff has failed to allege racketeering activity, *i.e.*, mail fraud in violation of 18 U.S.C. § 1341. In order to establish mail fraud, Plaintiff must show the following elements: "(1) a scheme to defraud (entailing a material misrepresentation), (2) an intent to defraud, and (3) the use of the mails." *United States v. Sorich,* 523 F.3d 702, 708 (7th Cir. 2008). A RICO claim based on alleged mail fraud must satisfy Rule 9(b)'s heightened pleading standard and must be pled with particularity. *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). "[A] RICO plaintiff must, at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Id*.

Defendants first argue that Plaintiff has not alleged a material misrepresentation because, as they asserted above, the documents attached to the complaint show that Defendants expressly laid out all of the numbers on which the payments to Plaintiff were made. While Plaintiff might dispute whether those numbers are correct based on the terms of the contract, Defendants contend that the documents accurately set forth which numbers had been used to calculate the payments to him. As noted by the Seventh Circuit:

4

> A mailing that is not in furtherance of the fraud, but instead works against it will not support a mail fraud conviction. Case law suggests that, in the context of mail fraud on an insurer, a mailing does not further the illegal scheme, and thus is outside the statute, when it serves to put the defrauded person on notice of the fraud, makes the execution of the fraud less likely, opposes the scheme, or discloses the nature of the fraud.

*United States v. Koen*, 982 F.2d 1101, 1107 (7th Cir. 1992). Such an instance exists here. Indeed, the complaint refers to Exhibits C and D, example payment sheets received by Plaintiff from Defendants, which are annotated to show that "although the actual line haul (L/H) charge was $7,416.79, a different understated line haul (L/H) amount [which was also included on the payment sheet] was used to arrive at the line haul figure of $3,858.33." (Compl., Dkt. #1, ¶¶ 21-22; *id*., Exs. C, D.) Because the mailings actually disclosed the numbers on which the payments to Plaintiff were made, *i.e*., the nature of the purported fraud, they cannot be in furtherance of the fraud. Therefore, the motion to dismiss the RICO claim for failing to allege a misrepresentation is granted.

This flaw in Plaintiff's allegations illustrates why courts have expressed an ongoing concern about turning general commercial disputes based on the parties' different interpretations of a contract into federal RICO claims. *Carr v. Tillery*, 591 F.3d 909, 918 (7th Cir. 2010) (explaining that breach of contract claims "cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal. RICO is not a proper vehicle for levering a breach of contract suit . . . into federal court."). Particularly applicable here is the following observation in *Carr*:

> The defendants did not pay Carr the fees to which he contends he was entitled by the Memorandum of Understanding: the complaint calls this extortion, financial exploitation of an elderly person, theft in interstate commerce, mail fraud, wire fraud, and so on almost *ad infinitum*. If such renaming satisfies civil RICO, we shall see a wholesale migration of breach of contract suits into the federal courts, given the procedural advantages of so proceeding that we noted earlier.

*Id.*

In any event, Plaintiff's allegations of a pattern of racketeering are also insufficient. To show a pattern, Plaintiff must first demonstrate that Defendants committed at least two acts of racketeering activity in a ten-year period. 18 U.S.C. § 1961(5). To establish a pattern, "[u]ltimately, a civil RICO plaintiff must satisfy the 'continuity plus relationship' test: 'the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong).'" *Dremco, Inc. v. Diver*, No. 12 C 8703, 2013 WL 1873917, at *5 (N.D. Ill. May 3, 2013) (citation omitted). As to the continuity prong, "'[r]elevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries.'" (*Id*.) (citation omitted).

According to the complaint, "[o]n numerous occasions, Defendants Atlas and/or Ace and the members of the Defendant class either mailed, or caused to be mailed, false and misleading settlement sheets to Plaintiffs and the members of the Plaintiff Class." (Compl., Dkt. # 1, ¶ 39.) The complaint goes on to allege that "[t]he predicate acts of mail fraud both (a) extended over a substantial period of time and/or (b) by their very nature, and the nature of the alleged scheme to defraud Plaintiff and the members of the Plaintiff class, project into the future with a threat of repetition." (*Id*.) As an initial matter, the Court notes the absence of any specific allegations regarding the length of the purported fraud, how often it occurs, the number of victims, or the threat of continuity.

In addition, Plaintiff does not allege a variety of predicate acts and only one scheme. The Seventh Circuit does not "'look favorably on many instances of mail and wire fraud to form a pattern,'" since "all modern business transactions entail use of the mails or wires." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (citation omitted) (finding no pattern based on hundreds of invoices sent through the mails to the plaintiff's former customers). "[M]ail and wire fraud allegations 'are unique among predicate acts' because multiplicity of such acts 'may be no indication of the requisite continuity of the underlying fraudulent activity.'" *Dremco, Inc.*, 2013 WL 1873917, at *5 (citations omitted). Plaintiff pleads no facts to support a finding of ongoing long-term criminal activity versus a simple difference in the interpretation of a contract and settlement sheets sent out based on Defendants' interpretation. *Midwest Grinding*, 976 F.2d at 1022 (continuity component intended "to forestall RICO's use against isolated or sporadic criminal activity, and to prevent RICO from becoming a surrogate for garden-variety . . . actions properly brought under state law").

Nor does the complaint satisfy the RICO distinctiveness test. "Section 1962(c) requires a plaintiff to identify a 'person'— *i.e*., the defendant— that is distinct from the RICO enterprise." *United Food and Commercial Workers Unions and Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013). "And that person must have conducted or participated in the conduct of the *enterprise's* affairs, not just its own affairs.'" *Id*. (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (internal quotation marks and alterations omitted) (emphasis in original)). Here, Plaintiff identifies the "person" as "Atlas and/or Ace." (Compl., Dkt. # 1, at ¶ 36.) But, "how [are Atlas and/or Ace] conducting the affairs of an enterprise through a pattern of racketeering activity?" *Baker v. IBP, Inc*., 357 F.3d 685, 691 (7th Cir. 2004).

Plaintiff identifies Atlas and its owners-agents as a cooperative and therefore a legal entity RICO enterprise. (Compl., Dkt. # 1, at ¶ 37.) It alleges in the alternative that Atlas and its owners-agents constitute an association in fact enterprise. (*Id*.)[2] But, Plaintiff also alleges that Atlas is a

---

[2] Specifically, Plaintiff alleges that "Atlas and its owners-agents have a common purpose to operate a profitable moving van line and wrongfully increase their *respective* profits by underpaying Plaintiff[]." (Compl., Dkt. # 1, ¶ 37) (emphasis added). It goes on to allege that "Atlas and its owners-agents had and maintained relationships with each other, such relationships being defined by contractual agreements between and amongst them, as well as

6

"cooperative van line owned by its agents." (Compl., Dkt. # 1, ¶ 4.) Thus, Plaintiff's own allegations define Atlas to be the same as the purported enterprise, but "[w]ithout a difference between the defendant and the 'enterprise' there can be no violation of RICO." *Baker*, 357 F.3d at 692. "The nub of the complaint is that [Atlas] operates itself unlawfully." *Id.* at 691. "[T]he complaint does not allege . . . that [Atlas] has infiltrated, taken over, manipulated, disrupted, or suborned a distinct entity or even a distinct association in fact." *Id.*

In its response to the motion to dismiss, Plaintiff asserts, despite having used the term "Atlas and/or Ace" throughout the relevant allegations in the complaint, that it was actually Ace that used the enterprise as "a vehicle to conduct the underpayment scheme." (Pl.'s Resp., Dkt. # 31-1, at 22). But Plaintiff alleges no facts in support of such a claim. Plaintiff alleges only that Ace has historically been one of the top revenue-producing agents in the Atlas network, and, on information and belief, because of the leadership positions Ace has held within Atlas, including that its Chairman of the Board was and continues to be a director of Atlas, "plays a high level role in shaping the way Atlas does business." (Compl., Dkt. # 1, ¶ 40.) The complaint is completely devoid of any facts supporting a claim that Ace "infiltrated, took over, manipulated, disrupted, or suborned" the purported legal entity of the cooperative van line or association in fact. *Baker*, 357 F.3d at 691.

For these reasons, the Court grants the motion to dismiss the RICO claim. Plaintiff is granted an opportunity to amend its complaint based on this order. The Court, however, admonishes Plaintiff that "Congress enacted RICO to target long-term criminal activity, not as a means of resolving routine commercial disputes." *Kaye v. D'Amato*, 357 Fed. Appx. 706, 717 (7th Cir. 2009). Plaintiff has 21 days to amend his complaint to the extent he can in compliance with Rule 11.

B.   Motion for Partial Summary Judgment

Defendants have also filed a motion for summary judgment as to Plaintiff's (and ultimately, the putative class') request for injunctive and declaratory relief because Plaintiff no longer has any contractual relationship with Defendants. According to Defendants, Plaintiff lacks standing to sue for injunctive relief because past violations of the law do not support the Article III case or controversy requirement as to injunctive relief. *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005). Plaintiff acknowledges that he no longer has a contractual relationship with Defendants but argues that he will benefit from an injunction in this case because it will "set a precedent in the industry and ensure that all owner-operator agreements are revised accordingly." (Pl.'s Resp., Dkt. # 37, at 4.) The Court is unwilling to accept this broad assertion with no evidentiary or legal support as a basis for Plaintiff's standing.

Because Plaintiff has not demonstrated that he is likely to be subject to similar treatment in the future by Defendants he cannot seek prospective relief. *Campbell v. Miller*, 373 F.3d 834, (7th Cir. 2004) (noting no class had been certified and "[u]nless the same events are likely to happen

---

their common course of dealing." (*Id.*)

again to [plaintiff] there is no controversy between him and the City about the City's future handling of other arrests," thus "he [was] not the right party to pursue injunctive relief."); *Sierakowski v. Ryan*, 223 F.3d 440, 445 (7th Cir. 2000) ("[P]ast wrongs. . . [are] not sufficient to confer standing for injunctive relief"). Thus, the Court grants Defendants' motion for summary judgment as to Plaintiff's request for injunctive relief. To the extent Defendants ask for the same relief as to the putative class, the Court finds the request premature and will address the issue, if necessary, in the context of a motion for class certification.

**Date**: October 2, 2013

_____
**United States District Judge
Ronald A. Guzmán**